## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58866-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| YVONNE RENEE FEATHERSTONE<br>aka YVONNE RENEE WINTEROWD,[†] | |
| Appellant. | |

CHE, J. — Yvonne Renee Featherstone (Winterowd) appeals the trial court's order denying her motion to reallocate legal financial obligation (LFO) payments.

As part of Winterowd's sentence for first degree identity theft, the trial court ordered her to pay restitution, and the clerk's office assessed collection fees. In a separate matter, the trial court vacated Winterowd's unlawful possession of a controlled substance (UPCS) conviction, refunded the LFOs paid, and applied the refund to the outstanding restitution. Winterowd filed a motion to reallocate the LFO payment, arguing the clerk's office improperly distributed the refund monies to collection costs before the restitution principal. The trial court denied the motion, finding that the motion was not the correct mechanism for Winterowd's requested relief and that the clerk's office had discretion to do what it did.

---

[†] Featherstone informed the trial court that she now goes by Winterowd.

Winterowd argues the trial court erred by denying her motion to reallocate the LFO payments because it failed to recognize its discretion to grant the motion, and it determined that the clerk's office had discretion to distribute payments to collection costs before restitution.

We hold that the trial court did not err by denying Winterowd's motion to reallocate LFO payments.

Accordingly, we affirm.

FACTS

In 2009, Winterowd pleaded guilty to first degree identity theft. As part of her judgment and sentence, the trial court ordered Winterowd to pay restitution "in accordance with the policies of the clerk of the court." Clerk's Papers (CP) at 3. By 2023, consistent with the clerk's office's policies, it had assessed collection costs totaling $600. In June 2023, Winterowd petitioned the trial court to waive nonrestitution LFOs, remit or reduce unpaid discretionary LFOs, remove the unpaid LFOs from collections, and waive any collection costs. In July 2023, the trial court ordered waiver of all nonrestitution interest on Winterowd's LFOs; remission of the crime victim penalty assessment, court costs, DNA fee, and warrant fee; and removal of LFOs from collections. This order did not waive collection costs.

In July 2023, in a different cause number, the trial court granted Winterowd's motion to vacate her UPCS conviction pursuant to *State v. Blake*.[1] It ordered a refund of $1,200 paid in that case but included a proviso that if Winterowd had unpaid, past due LFOs unaffected by *Blake* in other cause numbers under that court's jurisdiction, the court clerk could apply the

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021). In *Blake*, our Supreme Court held that Washington's strict liability drug possession statute was unconstitutional and vacated the defendant's conviction. *Id.* at 195.

refund to satisfy those LFOs.  The clerk's office then applied the refund to the identity theft

case's collection costs prior to applying any monies to the restitution principal.

In September 2023, Winterowd then filed a motion under RCW 9.94A.760 to reallocate

the LFO payment to the restitution principal, waive the remainder of the LFOs including

restitution interest, and refund the remaining balance.  In her motion, Winterowd primarily

argued that the clerk's office did not have authority to distribute payments to collection costs

before restitution because it was required to follow the financial distribution priority list provided

in RCW 9.94A.760(2).  Winterowd requested the trial court to order the clerk's office to

reallocate the LFO payment from collection costs to restitution first, waive the remaining balance

of restitution interest, and then refund the remaining money to Winterowd.

In response, the State argued that the clerk's office had the authority to apply payments to

collection costs under former RCW 9.94A.780 (2011) before applying those payments to

restitution under RCW 9.94A.760.[2]  The State argued that collection costs under former RCW

9.94A.780(7) (2011) were not LFOs and thus were not subject to the distribution priority list in

RCW 9.94A.760.

At the outset of a hearing on Winterowd's motion, the trial court noted that there was no

representative from the clerk's office present and that there was no action against the clerk's

office.  It questioned whether Winterowd's motion was proper as part of her criminal case.  The

trial court expressed that it did not think it had the legal basis to grant Winterowd's requested

---

[2] Former RCW 9.94A.780 (2011) provides that a defendant must pay the county clerk's assessment for collection costs and that the clerk "shall apply it to the cost of collecting legal financial obligations under RCW 9.94A.760."  Effective June 9, 2022, RCW 9.94A.780 was repealed.  LAWS OF 2022 c.29, § 13(1).

relief, explaining that "[t]he clerk's office is a separately elected office . . . and they have discretion in certain areas . . . and what is being asked is the court to order the clerk's office to do something else. That sounds like a writ of mandamus. That is not what is before the court." Rep. of Proc. (Oct. 12, 2023) at 30-31.

Consistent with its oral ruling, in its written order, the trial court denied Winterowd's motion, concluding that it was "not the correct mechanism for [her] request," that "the clerk's office had discretion under the applicable statutes," and that "there [did] not appear to be a legal basis to grant [her] request." CP at 29.

Winterowd filed another LFO petition in October 2023. In November 2023, the trial court found that Winterowd had been released from confinement, that she was indigent, and that her failure to timely pay LFOs was not willful. It then removed the remaining LFOs from collection, waived nonrestitution and restitution LFO interest, and waived the "remaining balance of ALL outstanding LFO's in this case." CP at 43. At the time of the trial court's order, there were no outstanding collection costs.

Winterowd appeals.

ANALYSIS

Winterowd argues the clerk's office in this case violated RCW 9.94A.760(2) by applying refund monies to Winterowd's collection costs[3] before applying them to restitution. Winterowd

---

[3] Winterowd does not dispute that the clerk's office had discretion to assess collection costs pursuant to former RCW 36.18.016(29) (2009) and former RCW 9.94A.780(7) (2011). RCW 36.18.016(29) (2009) provides that the clerk may impose an annual fee of up to $100, pursuant to RCW 9.94A.780, for the collection of unpaid LFOs. RCW 9.94A.780 provides that the clerk may impose a monthly or annual assessment for the cost of collections.

contends the trial court had the authority to correct this action by directing the functions of the clerk's office. She further argues the court abused its discretion by failing to do so.

### SUPERIOR COURTS' AUTHORITY TO DIRECT THE CLERK'S OFFICE TO REALLOCATE LFO PAYMENTS

### I. STANDARD OF REVIEW

Generally, we review discretionary trial court decisions for abuse of discretion. *State v. Gaines*, 16 Wn. App. 2d 52, 57, 479 P.3d 735 (2021). The trial court's "failure to recognize that it has discretion to grant a motion is itself an abuse of discretion." *Id*. And the court's incorrect interpretation of the law is an abuse of discretion. *Id*.

### II. SUPERIOR COURTS' AUTHORITY OVER THE CLERK'S OFFICE

Winterowd relies on *In re Recall of Riddle*, 189 Wn.2d 565, 583, 403 P.3d 849 (2017) for her contention that the trial court had the authority to direct the clerk's office to reallocate LFO payments in accordance with RCW 9.94A.760. But *Riddle* is distinguishable.

In *Riddle*, a county clerk, appealed the trial court's ruling regarding a recall petition. 189 Wn.2d at 567. The recall petitioners alleged that Riddle had failed to transmit statutorily required court orders, refused to perform in-court duties, threatened to shut down the county superior court, and failed to properly collect and account for clerk's office revenue. *Id.* at 568. Riddle also had an ongoing disagreement with the superior court judges about the scope of her role as clerk, which led to the superior court adopting new local rules regarding the clerk's powers and duties. *Id*. Riddle refused to follow those rules, arguing that they were void. *Id*. Our Supreme Court noted that Riddle was, "by virtue of [her] office, clerk of the superior court." *Id*. The court also stated,

[A] court *does* have the authority to direct the functions of the clerk when [they are] acting in [their] capacity as clerk of the superior court. . . . Moreover . . . a court's rule-making authority in regard to court clerks is subject to the same restrictions as any other rules: "[T]o the extent that the court rule relates to practice and procedure rather than to the creation of substantive law, the rule is within the authority of the court."

*Id*. The court noted that a county clerk's duties are defined by both statute and court rules. *Id*.

Unlike the recall petitioners in *Riddle*, here, Winterowd did not allege in any civil action that the clerk's office violated a superior court's directives or its rules regarding a clerk's powers and duties. The court's reasoning in *Riddle* addresses the superior courts' authority to enact rules governing the scope of the clerk's role. *See id.* at 584 ("[Yakima County Superior Court Local Administrative Rule] 3 is within the scope of the court's rule-making authority, and Riddle has no legally justifiable excuse for refusing to follow it."). The court's reasoning does *not* suggest, as Winterowd contends, that superior courts may generally control clerks' actions so long as clerks are acting within their capacity as superior court clerks.

Further, Winterowd contends that the trial court has authority under RCW 36.18.190 to order the clerk's office to reallocate payments after the clerk's office applied refund monies to Winterowd's collection costs before applying them to restitution. We disagree under these facts.

RCW 36.18.190 provides that "[t]he servicing of an *unpaid* court obligation does not constitute assignment of a debt, and no contract with a collection agency *may remove the court's control over unpaid obligations owed to the court*." (Emphasis added.) RCW 36.18.190 expressly authorizes superior courts to retain control over *unpaid* LFOs, and the plain language of the statute shows that the provision "takes precedence over the court clerks' authority." *Gaines*, 16 Wn. App. 2d at 59.

In *Gaines*, this court held that the superior court abused its discretion by failing to recognize that it had authority under RCW 36.18.190 to remove an LFO account from a third-party collection agency after a superior court clerk referred the account to the agency. *See* 16 Wn. App. 2d at 60. This court concluded that superior courts retain control over the amount of LFOs under RCW 36.18.190, allowing them to reduce LFO amounts by removing an LFO account from collections and remitting collection fees. 16 Wn. App. 2d at 59-60.

From the holding in *Gaines*, Winterowd contends that because the superior court has authority to remove an LFO account from a collection agency even after a superior court clerk has referred the account to the agency, that the court likewise has authority in her criminal matter, to order the clerk's office to reallocate LFO payments it has already made. We are unpersuaded by Winterowd's contention and decline to extend *Gaines* to apply in Winterowd's circumstances. Though superior courts retain control over the amount of *unpaid* LFOs, *Gaines* does not otherwise suggest that superior courts may control the clerk's office's actions under these circumstances where LFOs had already been paid.

Winterowd likewise fails to show, as explained above, that *Riddle* supports such a proposition. And she cites to no other authority to show that superior courts retain control over *paid* LFOs and that this court has the ability to grant her the relief requested under these circumstances. Thus, we hold that the trial court did not err by denying Winterowd's motion to reallocate LFO payments where the LFOs had already been paid. Therefore, we do not decide whether the clerk's office violated RCW 9.94A.760 nor whether Winterowd properly filed her motion in this criminal case.

No. 58866-8-II

## CONCLUSION

We hold that the trial court did not err by denying Winterowd's motion to reallocate LFO payments. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J._
Che, J.

We concur:

_Cruser, C.J._
Cruser, C.J.

_Price, J._
Price, J.